morning is the people of the state of Illinois versus I assume Kenny Dye 416 0447 for the appellate Mr. Gomez for the I believe it's purchase. You may proceed. Good morning, Your Honor, counsel, and may it please the court. My name is Michael Gomez from the Office of the State Appellate Defender, and I'm here on behalf of my client, Kenny Dye. This case presents a classic Brady violation where the state failed to disclose one of its witnesses prior conviction and another witness's probation revocation proceedings that occurred while Mr. Dye was awaiting trial. The question for the court below and this court now is whether the state's Brady violation was sufficiently prejudicial to warrant a new trial, and it was. As the court below stated, there is no question the evidence in this case was close. This was simply a credibility contest between the state's witnesses and Mr. Dye, and even with that evidence, the jury struggled to reach a verdict. They issued four notes to the court saying they could not reach a unanimous verdict, prompting the court to issue a prim instruction. Now, the evidence was close because there were inadequate conditions for the state's witnesses to make the initial viewing and then suggestive conditions for those witnesses to focus solely on Mr. Dye and no one else. As far as the inadequate conditions to make the initial viewing, the offender was masked from the nose down, leaving the witnesses only to see the offender's eyes. And they never ID'd, the state's witnesses never ID'd Mr. Dye on their own. In fact, the next day it was when Terry Evans went to visit his cousin and mentioned that he had been robbed. His cousin was the one who gave him Mr. Dye's name. And after that, Terry Evans called his wife and said, look up Mr. Dye, look up Kenny Dye, this is the man who robbed us. Well, counsel, I think the evidence was he said he recognized this person, just couldn't put a name with the face. Isn't that what Terry said? Yes, Your Honor. Terry said that he recognized the person, couldn't put a name to the face. He later stated that he never knew the defendant's name. He never knew him by name. But he also said that when he spoke with his cousin and he heard Mr. Dye's name, he knew that was the person who robbed him before he had ever seen a photo. So in volume 19, page 98, he said once he heard Mr. Dye's name, he knew that was the robber, even though he hadn't seen the face. And before that he said he didn't know. And while this is something for the jury to consider in a way. Correct. And the most important evidence that the jury did not consider that bared on the credibility of both states' witnesses' testimony was that impeachment evidence that the state did not disclose. So the defense did not know, and Mr. Dye did not know, that there were fertile grounds to impeach both witnesses' credibility at trial. Defense counsel didn't know? Defense counsel, based on defense counsel's testimony at the evidentiary hearing, defense counsel knew of Terry Evans' prior convictions. He did not know of Lucy Evans' probation revocation, well, her conviction for possession of a controlled substance, her first offender probation status, or the probation revocation proceedings that were instituted against her and subsequently resolved in her favor while Mr. Dye was away at trial. So this information was unknown to defense counsel or Mr. Dye at the time of trial. So he was confronted with one witness who had at least two prior convictions that came out before the jury, but at the same time had another witness who was virtually unassailable. There was nothing to impeach for credibility. There was no point in trying to attack one witness while another witness whose testimony was similar, if not exactly the same, to make that argument in front of the jury. Now, had the state disclosed this information, and here Mr. Dye is entitled to a new trial if it shows simply that there was a reasonable probability that the trial outcome would be different. So it's not an actual innocence test, it's not a sufficiency test. It's simply to whether there's a reasonable probability that the outcome would be different. The undisclosed evidence bears on the credibility of the two witnesses whose testimony directly led to Mr. Dye's conviction. Importantly, there was some other evidence that did not match up, such as the shoe print from when Mr. Dye kicked in the door. When Mr. Dye was arrested three weeks later, the shoes he was wearing at the time, which was the only pair of shoes he owned since he had just been released from prison a few months earlier, did not match that shoe print. And then Mr. Dye testified. He asserted his right to testify and professed his innocence, even though he could be impeached with his own prior convictions. He took that chance anyway to profess his innocence. Let me ask you a question. Did the state disclose the two felony convictions of Terry? The state did not disclose those convictions. But those were known to the defense. Those were known to the defense. On one hand, the defense counsel testified at the evidentiary hearing that he performed his own search. Right. And the state confirmed those two convictions. Did he also testify that he didn't want to impeach people who he instead was simply trying to show they were mistaken? Did he say that was his purpose in not dwelling on that? And why he would not have dwelled on Lucy's situation had he been aware of it? Well, Your Honor, the whole point of cross-examination is to impeach witnesses' credibility. It is not mutually exclusive to argue, on the one hand, that witnesses were mistaken in identifying someone. And, on the other hand, bring in actual evidence of impeachment. Well, isn't that a choice the defense counsel would make? It would be a choice the defense counsel could make if the state had disclosed, if the defense counsel had all the information in front of him. And here there is no evidence that the defense counsel did. But he did have all the information about the husband or the boyfriend, Mr. Terry. He did have the evidence in front of him about Terry's convictions, but did not have any information about Lucy. So, importantly, his decision not to pursue any line of argument regarding Terry's impeached credibility, the reason why that matters is that there was another witness whose testimony was identical to Terry's, so there was no point in trying to knock out one witness, while there was another witness whose credibility was unimpeached. Here the state failed to disclose probation revocation proceedings against that other witness, whose credibility actually could be impeached and should have been impeached by any reasonable attorney. This is foreground for impeachment. And even more important than just the fact of prior convictions, but the fact that a witness could have been cooperating with the state and testifying against Mr. Dye in the hopes of receiving favorable treatment in his own case. Well, the probation revocation proceeding was withdrawn before she ever testified, wasn't it? Correct, Your Honor. But it was instituted a few months after Mr. Dye was arrested and the trial was pending. And so the petition was revoked. Mr. Dye was arrested in July of 2010. The petition to revoke was filed on August 12, 2010. And later, her probation was terminated successfully and the petition was withdrawn in December of 2010. So all of these proceedings happened while Mr. Dye was awaiting trial. By the same prosecuting attorney, by the way. This was not just the same office. It was in fact the same prosecuting attorney who was prosecuting Mr. Dye. He was also the one who was representing the state in the probation revocation proceedings against Lucy Evans. So the focus is on her state of mind. It's not whether there was an actual nefarious, something nefarious going on or whether there was a secret deal. It was whether she was cooperating with the state, whether she abided by her previous statements to them when she gave the IDOC photo to the police officer, even though she may have been unsure. It's whether she continued to cooperate with the state in the hopes of receiving favorable treatment in her own case. That is fertile grounds for impeachment against a witness who seemed virtually unassailable. Even defense counsel said that she seemed so convincing at trial that he didn't want to even suggest that she may have been lying. He just wanted to say that she was mistaken. But there is nothing mutually exclusive about saying that she was mistaken, but also that she abided by those mistaken convictions that she had. I don't disagree with you regarding whether they're mutually exclusive, but I can see a defense counsel thinking to themselves, I don't want to do both. Well, Your Honor, I want, you're sincere, but you're mistaken, as opposed to you're a lying miscreant. And it's not to say that, well, first of all, the defense counsel did not have this information, so he couldn't have made a reasonable decision based on the complete information before him. When the defense counsel made those statements, it was four years after trial, and they were self-serving while he was testifying in his own defense against other claims of ineffective assistance. So he did not know at the time that he made these supposed trial strategies that that's what he would have done. And Mr. Dye did not know. Mr. Dye did not have the opportunity to discuss that with the defense counsel and maybe find a new attorney who would challenge the witness' credibility on an extremely valid basis. Or maybe he could represent himself and do so on his own. Counsel, I had a question, but I think you just cleared it up. Your position is that while the defense counsel has testified, and I think I understand your argument in that it's self-serving, but when defense counsel testified, there was indication that there was knowledge of Lucy's legal situations at the time of trial. But it's just you're taking issue with the fact that it occurred four years later and was self-serving. Correct, Your Honor. There's no indication that defense counsel knew that Lucy had, first of all, been convicted for possession of a controlled substance, or that she had been given first-defendant probation, or that those revocation proceedings... And you would expect that to be memorialized in the defense attorney's file or somehow otherwise known or provable that he knew that or she knew that? Yes, Your Honor. Or he could have even testified that he did know about it just as he did with Terry Evans' convictions. But there's no... My understanding in my reading is that the testimony is that defense counsel knew at the time of trial of Lucy's situation. No, Your Honor. There is no evidence that defense counsel knew at the time of trial. So the testimony in the record is that this was in between the trial and the post-conviction proceeding wherein there was testimony that defense counsel learned of Lucy's probation, revocation? In defense counsel's testimony at the evidentiary hearing, he did not state that he knew at the time of trial that Lucy had this case going on, that it was his entire trial strategy, all of his testimony regarding his trial strategy, was based on the document, the docket sheet that was shown to him at the time of the evidentiary hearing, not that that was available to him beforehand. So all of these statements about his trial strategy is what he believed he would have done had he known that information. So that's what makes this avenue of defense counsel's trial strategy inconsequential because he didn't have this information. And Mr. Dye didn't have this information available to him at the time of trial. And this impeaching information completely changes the character and strength of the state's case and also Mr. Dye's defense strategies. Not only could he challenge both witnesses' credibility, but he could also question Lucy about her state of mind. But it's not for this court to speculate how he would have used it. It's just the fact that there is this impeachment information that was not disclosed by the state, even though they had a duty to do so. And it directly bears on the credibility of the state's witnesses, whose testimony was the only evidence that linked Mr. Dye to this offense, requires a new trial. There are no further questions. Thank you, counsel. You'll have time on rebuttal. May it please the Court, good morning. My name is Amelia Burgess, and today I'm appearing on behalf of the people of the state of Illinois. The question before the Court today is whether or not the trial court in this matter was manifestly erroneous in its decision that defendants' post-conviction trial, post-conviction petition should be denied after a third-stage evidentiary hearing. And I want to highlight that, that that is the question before the Court, the question of manifest error, because it is slightly different than what defense counsel suggested to the Court as the inquiry to be conducted today. Defense counsel focused on whether the inquiry was, did a Brady violation occur. But in actuality, the standard of review here today is the manifestly erroneous standard, and the question about whether or not the trial court's decision was one that was clearly error or clearly incorrect. And of course, underlying that analysis is the Brady analysis and whether or not there was a substantial showing of potential prejudice with regard to the facts of this case. The underlying question is whether or not the state improperly did not disclose the criminal backgrounds of two of its eyewitnesses in the case. And of course, the eyewitnesses, as defense counsel has discussed, were the primary source of evidence that resulted in the conviction of Mr. Dye. The two victims in this matter were able to bring to the police the picture of and the name of an individual that they said affirmatively and definitively was the individual who broke into their home. And this was not a fleeting interaction that they had. Unfortunately, it was a sustained interaction with this individual who broke into their home and assaulted them. And afterward, they were able to positively identify him at trial, sufficiently that a jury found him guilty beyond a reasonable doubt. However, first, before the court can get to the question of whether or not the post-conviction petition was properly dismissed, there's a threshold inquiry about whether or not the court should even look at this particular issue because not all issues are appropriate for consideration under the Post-Conviction Act. Only those issues that are constitutional in nature, which a Brady violation would be, but also only those issues that could not have been raised earlier in the proceedings. And as the State has noted in its brief, here the defendant could have raised these issues earlier in the proceedings and as such should have done so and has now foreclosed from doing so at the post-conviction stage. How would the defense counsel have known about Lucy's probationary status unless the State disclosed it? Yes, Your Honor. The State, the defense counsel would not have known about Lucy's probationary status unless it had come up in his own research. However, the question is not whether or not there's information the defendant did not know, but the question here and the alleged violation that the defense counsel has made was whether or not the State complied with its discovery obligations. Well, that's a good, did it? And it did not. It is evident from the record that the State did not respond to the defendant's discovery requests. And in fact, defense counsel during the third stage evidentiary hearing discussed that. Okay, so the State's position is that the State was required to disclose Lucy's probationary status. Correct, Your Honor. Why? Why were they obligated to disclose that? They were obligated to disclose it pursuant to the defendant's discovery requests. Which was what? Four criminal convictions, which at the third stage evidentiary hearing the State conceded that it would have included Lucy's probationary status. Because even though it is not admissible for the purposes of impeachment of credibility, the courts have found that that particular information is available or should be made available to the defense for questions of motive to cooperate or bias. And for those limited purposes, that information should have been made available to the defense upon request. So it was potentially exculpatory? That's essentially what you're saying? Correct, Your Honor. Correct, Your Honor. However, defense counsel at the third stage evidentiary hearing testified he was aware the State had not replied to his discovery requests and it was not his practice to file a motion to propel. So he made a choice at that point in time not to raise this issue, even though he was aware of the potential for it. Now, I believe it is accurate to say that the defense counsel at that point in time did not know when information had not been provided to him, but he knew information had not been provided to him. This certainly would be a very different argument if the State had responded to his discovery requests and said we simply don't have anything, because that would have been inaccurate. And that would be a completely different argument, but that is not what occurred here. So very early on in the proceedings. So he knew they didn't respond to his request, but he was unaware of the specific information he would have received had they responded to his request accurately? Correct, Your Honor. Correct, Your Honor. And in addition, so that's with regard to Lucy's probationary status, but with regard to Mr. Evans, the same status occurred. He requested the information that was not provided. He testified in the third evidentiary proceedings, though, that, again, he didn't file a motion to propel because it was his practice to do his own research, which he did, and discovered that that particular individual did have a criminal background, although at the third stage of evidentiary hearing, he did not remember the specifics of it or if he discovered all three prior convictions or just the two that everyone knows were fronted during the trial. Would those prior convictions also serve to establish a motive for the defendant? No, Your Honor, they would not. No, I meant a motive for the defendant to choose that house to do the home invasion. Your Honor, I think that is a very rational way of looking at it. Potentially, yes, that is one possible reason. Because the victim is, he might not be a drug dealer, but there's the implication that he's familiar with drugs, either using or selling or possessing. Yes, Your Honor, it could have been a reason that the defendant in this case believes that there might have been sums of money available if he had conducted the home invasion and a way to obtain either money or drugs if he believes that the victims in this case were in some way engaged in those types of practices. Yes, it could give rise to a motive. So, first and foremost, the court will have to look at the issue of forfeiture or waiver. And here, based on the record, it is clear that defense counsel and the defendant could have raised this issue earlier, but for various reasons, either chose not to or did not raise these issues earlier. As a result, there's simply not appropriate consideration under the post-conviction review. However, assuming that the court believes that post-conviction review is appropriate, again, the question there is not whether or not a Brady violation potentially occurred or whether there was a substantial showing of prejudice. The question that is the threshold there is whether or not the trial court's determination of this issue was manifestly erroneous. And defense counsel and the court have talked a lot about trial counsel's motive or trial counsel's strategy here, which I do think is important to understand why this evidence could not have made a difference, even if it had been disclosed earlier. And the reason is because this is not a case where the police had targeted a defendant and were attempting to find evidence in support of their belief that a certain individual had committed this crime. In reality, the people who first brought the name of the defendant and the identity of the defendant to the police's attention were the victims. As a result, defense counsel at the trial court level believed his best strategy was not one of proving bias or credibility issues for the witnesses, but instead one of mistaken identity, that they had simply targeted the wrong individual, that they had a partial glance at his appearance because he had covered a portion of his face, and that they ultimately had gone down the wrong road and simply chosen the wrong individual. Even the defendant during the trial, the defendant himself testified that he knew of no reason that Mr. Evans or Ms. Casey would have targeted him. He said there was no grudge between them. So the defense counsel really had limited resources with which to undermine the credibility of the witnesses against the defendant. And furthermore, even if there were other potential alternatives or other ways defense counsel at the trial court level could have argued this case, we don't need to speculate about what he would have done with this evidence because he affirmatively testified during the third post-conviction proceeding and was asked that very explicit question.  And trial counsel at that point said no. The trial court found that to be persuasive because if trial counsel would not have changed his strategy based on this information, as a result, there's no question that this information could not have caused any prejudice to the defendant. And counsel attempts to undermine those statements by trial counsel by saying that they were self-serving at that point, that trial counsel was on the defensive. And that's one way of looking at it. However, trial counsel went on to explain why it was he thought that that would not have been a strategy he would employ. And the reason he would not employ that strategy has to do with, to some extent, the fact that the jury already knew about two of Mr. Evans' convictions because the state fronted that information. So as a result, those two convictions could not have any way of prejudice the defendant because the jury knew about them. But second of all, it gets into the timeline of Ms. Evans' probationary status. And in the reply brief, defense counsel, in this case, implies that something about that timeline is necessarily suspect, that the fact that there was a motion to revoke during the proceedings is something that could have been explored or mined on cross-examination to undermine the witness in this case. And certainly, counsel could have done that. However, then the state could have easily rehabilitated the situation by pointing out that there is no inference of Ms. Evans feeling pressure to cooperate with the defense because the trial occurred well after her probationary status was discharged. The problem with that argument is that isn't a decision for the state to make. That's a decision for trial counsel to be accused to make, whether or not they're going to attempt to impeach Ms. Evans on that issue. Yes, Your Honor, and I would agree. And I think throughout the proceedings, the state, at least throughout the post-conviction proceedings, the state has been very clear that if this were done over again, that information should have been provided to defense counsel. But we're not looking at that question today. What about pretrial discovery orders and Brady and the obligation for the state to disclose that information? Yes, Your Honor, and that information should have been disclosed to defense counsel. However, the question isn't whether or not it should have been disclosed. The question isn't whether or not things could turn out differently if the case were tried again today. Under Brady, there is no prejudice unless there is a reasonable probability that the result would have been different if the evidence had been disclosed. That is very different than I think the inquiry that defense counsel is asking me to make today. Defense counsel is framing it slightly differently with the question of, could there be a different result if we tried it today? But that is not the inquiry under Brady for the prejudice problem. The inquiry is, would there have been a different result or a reasonable probability of a different result if that information had been provided at the point in time when it should have been. The trial court in this case, after considering all of the testimony and the evidence presented to it at the post-conviction hearing, said no. There was no reasonable probability that there would have been a different outcome if the state had provided that information at the time it should have. And that's when looking at all of the information here. The fact that one of the defendants had prior criminal convictions. Nevertheless, the jury found that individual to be sufficiently persuasive. The fact that trial counsel said and was able to explain why he would not have used this information in a way that was different than the way it was used. And as a result, the trial court concluded that there was, while the information should have been disclosed, the defendant had not met his burden at the post-conviction stage of proceedings. Substantial showing of constitutional violation. And the question of course, as I previously stated for the court today, is whether or not that trial court determination was manifest in the erroneous. And the question is not whether or not it could be seen from a different light. Like most matters that come before this court, there are many different ways to view it. The only question though today is whether or not the trial court was clearly erroneous in the way it viewed it. And under the circumstances of this particular case, it was not. The trial court made a rational reasoned decision, finding that the defendant in this matter was not entitled to post-conviction relief. As a result, this state would respectfully request that this court affirm the trial court ruling denying defendant's request for post-conviction relief. Thank you. I have one other point. I find it suspect, and I'm just going to make sort of a statement and ask for your response. Defense counsel prior to trial does their own research into the key witnesses prior, and then of course others were fronted, but not another key witness according to the record. That seems inconsistent. Thank you, Your Honor. And I would suggest that I've read his testimony slightly differently at the post-conviction hearing. At the post-conviction hearing, he said he did research the criminal histories of both Evans and Casey and did remember finding that Mr. Evans had prior criminal convictions. He went on to say he did not recall finding any prior convictions for Ms. Casey. Yeah, and I'm glad you brought that up and reminded me of that, because I think in asking opposing counsel questions, I was confused because it was my recollection that there had been research with regard to both witnesses. Yes, Your Honor. And I think it's that point right there that led me to believe that. Yes, Your Honor. And I appreciate the opportunity to clarify, and I thank you for bringing that up, because it is my reading of his testimony that he researched both of them, and he did not say he did not find any information on Ms. Casey. What he said was he did not remember finding anything, and that is an important distinction. Thank you. Thank you. Rebuttal. Yes, Your Honor. Yes, Your Honor, I'd like to start by clarifying what defense counsel knew before trial. In volume 29, page 42, defense counsel did say that he did not recall finding any information about Ms. Casey's case. On page 89, defense counsel, in volume 29, defense counsel said that he was testifying based on the exhibit he saw that day, the docket sheet. In page 624 of the common law record, the court, in its order denying her conviction relief, stated, he, defense counsel, did not find any convictions for Lucy Casey and was not aware of the situation regarding her probation violation while Dye's case was pending. So the evidence is that defense counsel did not know about Ms. Casey's conviction or her revocation proceedings. Did not know or did not find. Or did not find. But I think the most important point to clarify is that it's not defense counsel's duty to do so. It is the state's duty as an affirmative continuing obligation to disclose exculpatory and impeaching information on its own witnesses. And the state admits today and at the evidentiary hearing and throughout the entire proceedings in this case that it did not do so. It did not do so. And it's important to remember that it's Mr. Dye who holds this right to due process. It's not his counsel and it's not anyone else.  So all this focus on defense counsel's strategy or what he would have done four years ago kind of ignores that it's Mr. Dye's right. And Mr. Dye was the one who could have made fully informed decisions about whether to change counsel or whether to proceed pro se so that he could use this incredibly impeaching information on the most damaging witness that he had before him. And to clarify, the question before the court is whether the trial court's ruling was manifestly erroneous. And it is our contention that it was for the same reason that the state advances here today. First, the focus is not on defense counsel's strategy but on the evidence as a whole. And as we've gone over, the evidence was close. I mean, the trial court stated there's no question the evidence was close. And to clarify, the witnesses were not the first ones to identify Mr. Dye. It was Terry Evans' cousin who was the first one to give Mr. Dye's name. And then they went along with that. No other person has ever been investigated as to whether they committed this crime or not. The cousin just said that sounds like so-and-so. It sounds like so-and-so. And then he also said that he had heard Mr. Dye and two other people who were going around robbing people. And it was Terry Evans at that point when he heard that name and said, yes, that's the person, and told his wife to look up Mr. Dye on the Internet because that was the person who robbed him. And then when she looked at the IDOC photo and saw him come up with residential burglary listed as one of the convictions, which in and of itself is prejudicial, they went along with that. And that was the only person they ever had in their mind. So there was no reason for the jurors to ever doubt her strong belief in that because they didn't know there were any grounds for impeachment. And again, none of this information was presented to the jury. We can speculate as to how it would have played out, but none of this information was ever presented to the jury. The jury could never make a proper determination as to whether these two witnesses actually could be believed. And finally, the state advances an argument that it did not make the law that this claim was waived. Essentially, the state is asking to benefit from its own due process violation. The state admits, again, throughout the entire proceedings, that it did not disclose evidence that clearly falls under Brady and clearly falls under the materials that the Illinois Supreme Court requires them to disclose. But if this court were to find waiver, it would basically allow the state to ask the right questions at trial and foreclose any Brady claim. Moreover, this claim is based on information and documents that were attached to the post-conviction petition. So it's new evidence. It's nothing that defense counsel or that direct appeal counsel could gather based on the trial record. And if direct appeal counsel tried to add any information, it would have been improper because it was not before the trial court. So, Your Honors, given everything we've advanced today, we ask this court to find that the trial court's ruling that Mr. Dye was not entitled to a new trial due to the state's clear due process violation was manifestly erroneous and ask this court to remand for a new trial. Thank you. Thank you, Kenneth. Thank you. The matter is now advised.